

*U.S. Department of Justice*

*United States Attorney*
*Western District of Washington*

*Please reply to:*  
*Jonas Lerman*  
*Assistant United States Attorney*  
*Appellate Division*  
*Direct Line: (206) 588-9582*

*Seattle Office:*  
*700 Stewart Street, Ste 5220*  
*Seattle, WA 98101-1271*  
*Tel: (206) 553-7970*  
*Fax: (206) 553-0582*  
*www.usdoj.gov/usao/waw*

*Tacoma Office:*  
*1201 Pacific Ave., Ste 700*  
*Tacoma, WA 98402-4305*  
*Tel: (253) 428-3800*  
*Fax: (253) 428-3826*

February 4, 2025

Molly Dwyer, Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94013

      Re:    *United States v. DeBorba*, No. 24-3304
             FRAP 28(j) Letter

Dear Ms. Dwyer:

      This Court's decision in *United States v. Patnaik*, __ F.4th __, No. 23-10043 (9th Cir. Jan. 14, 2025)[1]—decided after the government submitted its answering brief here—refutes DeBorba's "materiality" challenge to Counts 4 through 6. *See* Opening Br. 44–49; Answering Br. 74–84. Those counts charged DeBorba with lying about his citizenship and immigration status when he bought guns and applied for a concealed-pistol license.

      The *Patnaik* defendants were tech-staffing executives who submitted fraudulent H-1B visa applications, lying about where foreign workers would work and what they would work on. Indicted for visa fraud and other crimes, they moved to dismiss, claiming that their lies were immaterial because USCIS had no right to request this information. The district court agreed, dismissing the indictment. Slip Op. 5–7.

      The government appealed, and this Court reversed: "[U]nder longstanding principles, the government may protect itself against 'those who would swindle it' even if the government demanded answers to questions it had no right asking." Slip Op. 5 (quoting *United States v. Kapp*, 302 U.S. 214, 218 (1937)). "So lying on H1-B visa applications remains visa fraud even when the lies were given in response to questions the government can't legally ask—as long as the misrepresentations could have influenced USCIS at the time they were made." Slip Op. 5. Precedent in varied contexts confirms "the principle that the government may prosecute false statements in response to an unlawful inquiry." *Id.* at

---

[1] https://cdn.ca9.uscourts.gov/datastore/opinions/2025/01/14/23-10043.pdf.

10–15. Whether USCIS exceeded its authority by asking "improper questions" was "legally irrelevant." *Id.* at 13.

This Court also rejected defense efforts to distinguish on materiality grounds "*Kapp* and its progeny," Slip Op. 14, including *United States v. Knox*, 396 U.S. 77 (1969), and *Bryson v. United States*, 396 U.S. 64 (1969)—arguments much like DeBorba's. *Compare* Opening Br. 47–48 ("[T]he cases cited examined elements *other* than materiality, under the general false statement statute . . . . These cases have no bearing on whether Mr. DeBorba's statements were material under different statutes."), *with Patnaik*, Slip Op. 14 ("But that's wrong. . . .").

*Patnaik* supports affirmance.

                                                  Yours truly,

                                                  TESSA M. GORMAN
                                                  United States Attorney

                                                  *s/ Jonas Lerman*
                                                  JONAS LERMAN
                                                  TANIA M. CULBERTSON
                                                  Assistant United States Attorneys

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-10043 |
| *Plaintiff-Appellant*, | D.C. Nos. |
| v. | 5:22-cr-00014-BLF-1 |
| NAMRATA PATNAIK; KARTIKI PAREKH, | 5:22-cr-00014-BLF-2 |
| *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted September 10, 2024
San Francisco, California

Filed January 14, 2025

Before: Kim McLane Wardlaw, Ronald M. Gould, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Bumatay

# SUMMARY[*]

### Criminal Law

The panel reversed the district court's judgment dismissing an indictment charging the defendants with submitting fraudulent H-1B visa applications, and remanded for reinstatement of the criminal charges.

The defendants served as chief executive officer and human resources manager of a semiconductor chip design consulting and staffing company that employs many H-1B visa holders. The Immigration and Nationality Act authorizes employers to request H-1B status for nonimmigrant workers in specialty occupations that American workers cannot fill.

The government alleged that in submitting H-1B visa applications, the defendants falsely stated that H-1B applicants would be working on internal projects on site, when in fact they would be contracted out to other companies. The defendants asserted in the district court that these alleged false statements could not be materially false because it was unlawful for the government to ask for such information. The district court accepted this argument.

The panel explained that under longstanding principles, the government may protect itself against "those who swindle it" even if the government demanded answers to questions it had no right asking. The panel held that lying on H-1B visa applications therefore remains visa fraud even

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

when the lies were given in response to questions the government can't legally ask—as long as the misrepresentations could have influenced the U.S. Citizenship and Immigration Services at the time they were made.

**COUNSEL**

Matthew M. Yelovich (argued), Assistant United States Attorney, Deputy Chief, Criminal Division; Neal C. Hong and Kelly I. Volkar, Assistant United States Attorneys; Merry J. Chan, Assistant Unites States Attorney, Chief, Appellate Section, Criminal Division; Ismail J. Ramsey, United States Attorney; United States Department of Justice, Office of the United States Attorney, San Francisco, California; for Plaintiff-Appellant.

Christopher J. Cannon (argued), Sugarman & Cannon, San Francisco, California; Bruce C. Funk (argued), Law Office of Bruce C. Funk, San Jose, California; for Defendants-Appellees.

Jonathan D. Wasden, ITService Alliance, Inc., Dallas, Texas, for Amicus Curiae ITService Alliance.

## OPINION

BUMATAY, Circuit Judge:

The Immigration and Nationality Act ("INA") authorizes employers to "request H-1B status for nonimmigrant foreign workers in specialty occupations" that American workers cannot fill. *United States v. Prasad*, 18 F.4th 313, 316 n.2 (9th Cir. 2021); 8 U.S.C. § 1101(a)(15)(H)(i)(b). To obtain an H-1B visa, an employer first must file a Labor Condition Application with the Department of Labor on behalf of the foreign worker. 8 U.S.C. § 1182(n)(1). The Application requires the employer to explain the need for the temporary worker, including the conditions, wages, and duration of employment. 8 U.S.C. § 1182(n)(1)(A); 20 C.F.R. § 655.730(c)(4).

If the Application is approved, the employer submits a Form I-129 Petition for a Nonimmigrant Worker ("I-129 Petition") with the U.S. Citizenship and Immigration Services ("USCIS"). 8 C.F.R. § 214.2(h)(1)(ii). The I-129 petition also requires certain information about the foreign worker and the employer, such as where the foreign worker will work and the worker's proposed wages. If USCIS approves the H-1B petition, the foreign worker receives a H-1B non-immigrant visa and is admissible as a temporary nonimmigrant worker. *Id.* § 214.2(h)(1)–(2); 20 C.F.R. § 655.700(b)(3). The H-1B visa is tied to the employment position in the petition. If an H-1B visa holder changes jobs, the new employer must obtain a new visa. 8 C.F.R. § 214.2(h)(2)(i)(D).

Defendants Namrata Patnaik and Kartiki Parekh (collectively "Defendants") were charged with submitting fraudulent H-1B visa applications. Specifically, the

government alleged that Defendants falsely stated that H-1B applicants would be working on internal projects on site, when in fact they would be contracted out to other companies. Before the district court, Defendants asserted that these allegedly false statements could not be materially false statements because it was unlawful for the government to ask for such information under *ITServe All., Inc. v. Cissna*, 443 F. Supp. 3d 14 (D.D.C. 2020). The district court accepted Defendants' argument and granted their motion to dismiss the indictment.

Yet, under longstanding principles, the government may protect itself against "those who would swindle it" even if the government demanded answers to questions it had no right asking. *See United States v. Kapp*, 302 U.S. 214, 218 (1937). So lying on H-1B visa applications remains visa fraud even when the lies were given in response to questions the government can't legally ask—as long as the misrepresentations could have influenced USCIS at the time they were made.

We thus reverse.

**I.**

Namrata Patnaik and Kartiki Parekh served as chief executive officer and human resources manager of PerfectVIPs, Inc., respectively. PerfectVIPs, Inc., is a semiconductor chip design consulting and staffing company, which employs many H-1B visa holders. According to the government, between 2011 and 2017, Defendants submitted 85 fraudulent H-1B visa applications for temporary nonimmigrant workers. The government alleged that these applications contained false representations and material omissions "relating to . . . the nature, existence, and scope of H-1B positions." In particular, the government alleges that

Defendants submitted visa petitions and supporting documentation falsely stating that the foreign workers would be working "onsite" at PerfectVIPs on "internal projects," when Defendants never intended for them to work at PerfectVIPs. Rather, Defendants contracted these foreign workers to work for offsite clients. Based on this scheme, the government alleges that clients paid PerfectVIPs at least $6.9 million to cover the costs of the workers' wages and salaries and provide a profit for the company. In early 2022, the government charged Defendants with conspiracy to commit visa fraud and three counts of visa fraud and aiding and abetting under 18 U.S.C. §§ 371, 1546(a), 2. Patnaik was also charged with one count of money laundering under 18 U.S.C. § 1957.

Defendants moved to dismiss the indictment for failure to state an offense. They argued that it is not a crime to provide USCIS with incorrect information about where H-1B beneficiaries will work or what specific projects they will work on. According to Defendants, USCIS may only ask about beneficiaries' "specialty occupation," so any "granular detail" about their projects is not legally material to the H-1B eligibility determination. Thus, even assuming they provided false information to USCIS, Defendants argued that the statements could not be material—an element of the visa fraud charges.

The district court granted the motion to dismiss. The district court relied on two developments to dismiss the charges. First, the district court reviewed *ITServe All., Inc. v. Cissna*, 443 F. Supp. 3d 14 (D.D.C. 2020). The district court read *ITServe* to mean that "USCIS may not require details concerning the specific projects upon which an H-1B visa beneficiary would be working." Second, the district court considered USCIS's June 17, 2020 Memorandum,

rescinding two policy memoranda following the *ITServe* decision ("Rescission Memo").[1] The district court read the Rescission Memo to confirm that USCIS could not ask employers for H-1B beneficiaries' "specific day-to-day assignments" and work itinerary. The district court then agreed with Defendants that their alleged false statements that the H-1B beneficiaries would be working at PerfectVIP's office on internal projects could not be "material" as a matter of law.

The government appealed. We have jurisdiction under 18 U.S.C. § 3731 and review the decision to grant the motion to dismiss the indictment de novo. *See United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007). We reverse the dismissal of the indictment, and remand for further proceedings consistent with this opinion.

## II.

"An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge[.]" *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016) (simplified). It need only "adequately allege[] the elements of the offense and fairly inform[] the defendant of the charge." *Id.* (simplified). We look to "the indictment as a whole, include facts which are necessarily implied, and construe it according to common sense." *Id.* (simplified). We don't consider whether the government can prove its case. *Id.* (simplified).

The indictment here alleged visa fraud. Visa fraud requires that: "the defendant (1) knowingly (2) made a false

---

[1] *See* USCIS, Rescission of Policy Memoranda (PM-602-0114) (June 17, 2020), https://www.uscis.gov/sites/default/files/document/memos/PM-602-0114_ITServeMemo.pdf

statement (3) that was material (4) and under oath (5) in an application required by the immigration laws or immigration regulations." *United States v. Wang*, 944 F.3d 1081, 1087 (9th Cir. 2019) (citing 18 U.S.C. § 1546(a)).

This case turns on the element of materiality. A visa-application statement is material if it "could have affected or influenced the government's decision to grant th[e] petition[]." *United States v. Matsumaru*, 244 F.3d 1092, 1101 (9th Cir. 2001). Materiality is assessed "at the time the alleged false statement was made" and "[l]ater proof that a truthful statement would not have helped the decision-making body does not render the false [statement] immaterial." *United States v. McKenna*, 327 F.3d 830, 839 (9th Cir. 2003) (simplified).

The indictment alleges that Defendants falsely represented in several I-129 petitions that specific H-1B visa applicants "would be employed by PerfectVIPs to work on PerfectVIPs in-house projects and contracts at PerfectVIPs' office locations, when the defendants knew at the time that these representations were false." Instead, the indictment says that Defendants knew that PerfectVIPs would contract out the visa holders to other employers—to work on offsite projects.

The indictment sufficiently alleges a material misrepresentation. By law, H-1B petitioners must "establish that the H-1B beneficiary employees would fill specific, bona fide positions that were available at the time [the petitioner] filed the petitions, and that there was, or would be, a legitimate employer-employee relationship between [the petitioner] and the H-1B beneficiaries." *See Prasad*, 18 F.4th at 316. Accurate information on where and for whom the H-1B beneficiaries will work *could* affect or influence

the decision to grant the H-1B visa petition. *See Matsumaru*, 244 F.3d at 1101. Thus, a jury could find Defendants' alleged false statements material.

The district court ruled that Defendants' alleged misrepresentations were not "material" as a matter of law because, under the later *ITServe* ruling and USCIS Rescission Memo, USCIS cannot ask petitioners to provide H-1B beneficiaries' work assignments, itineraries, or the details of specific work projects. *See ITServe*, 443 F. Supp. 3d at 14. The district court thus didn't believe that the government could show materiality because "USCIS [was] prohibited from asking for this information." Defendants likewise assert that the alleged false statements cannot be material to the government because USCIS can't request information that Congress did not require. But even assuming that USCIS was not permitted to ask detailed questions about jobsite locations or specific projects, Defendants cannot lie to the government in response.

The principle that the government may punish untruthful responses to unlawful questions as fraud goes back to the Supreme Court's 1937 *Kapp* decision. Since then, the Court's cases "have consistently—indeed without exception—allowed sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Government exceeded its constitutional powers in making the inquiry." *United States v. Mandujano*, 425 U.S. 564, 577 (1976) (collecting cases).

In *Kapp*, the government charged hog sellers with making false statements to the government to obtain benefits under the Agricultural Adjustment Act ("AAA"). 302 U.S. at 215. The defendants sold the hogs to the government at premium prices by misrepresenting the identity of the hogs'

producers. *Id.* But the defendants claimed that the provision of the AAA providing for the premium pricing was unconstitutional. *Id.* at 216. The district court dismissed the "false claims" offense against the defendants because "the representations . . . cease to be misrepresentations of material facts when the act itself falls." *Id.* (simplified).

The Court rejected this materiality argument and reversed. *Id.* at 218. The Court compared the situation to permitting "embezzl[ing] moneys in the United States Treasury with impunity" just because the fraud occurred "in the course of invalid transactions." *Id.* at 217. In the Court's view, the defendants were not charged with violating the AAA but with fraud, which aims to combat "cheating the government." *Id.* at 217–18. And "Congress was entitled to protect the government against those who would swindle it regardless of questions of constitutional authority." *Id.* at 218. Thus, the Court established that "[s]uch questions" of the constitutionality of the law "cannot be raised by those who make false claims against the government." *Id.* In other words, even if the government's request for information was unconstitutional, it didn't matter for purposes of the materiality of the false statements.

In the decades following *Kapp*, the Court confirmed the principle that the government may prosecute false statements in response to an unlawful inquiry. *See, e.g.*, *Kay v. United States*, 303 U.S. 1, 6 (1938) ("When one undertakes to cheat the Government or to mislead its officers . . . by false statements, he has no standing to assert that the operations of the Government in which the effort to cheat or mislead is made are without constitutional sanction."); *Dennis v. United States*, 384 U.S. 855, 867 (1966) ("One who elects . . . a course [of fraud and deceit] as a means of self-help may not escape the consequences by urging that his

conduct be excused because the statute which he sought to evade is unconstitutional."); *United States v. Knox*, 396 U.S. 77, 79 (1969) ("[O]ne who furnishes false information to the Government in feigned compliance with a statutory requirement cannot defend against prosecution for his fraud by challenging the validity of the requirement itself.").

When confronting unlawful government questioning, the Court rejected blanket immunity for those who lie and suggested other recourse. In *Bryson v. United States*, 396 U.S. 64, 67–68 (1969), a union member claimed that a statute requiring an affidavit of non-affiliation with the Communist Party violated his First Amendment and due process rights. Even so, that did not justify lying on the affidavit. To the Court, "the question of whether [the statute] was constitutional or not is legally irrelevant to the validity of petitioner's conviction under § 1001, the general criminal provision punishing the making of fraudulent statements to the Government." *Id.* at 68. Otherwise, we create a principle that "a citizen has a privilege to answer fraudulently a question that the Government should not have asked." *Id.* at 72. Instead, the proper response to illegal government questioning is recourse to the legal process:

> Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.

*Id.*

Our circuit has fully embraced the Court's principle too. One year after *Kapp*, our court applied it to deny a challenge to a fraud conviction. *Hills v. United States*, 97 F.2d 710, 713 (9th Cir. 1938). In that case, the defendant lied about the source and origin of gold sold to the government. *Id.* The defendant argued that the statute that caused him to submit the false statement, the Gold Reserve Act of 1934, unconstitutionally delegated authority to the Treasury Secretary. *Id.* We made short work of the claim:

> Without discussion on the point, it is sufficient to say that appellant was indicted under a statute designed to protect the United States against fraud and imposition. . . . In [*Kay* and *Kapp*], it was pointed out that Congress is entitled to protect the Government against those who would swindle it, regardless of questions of constitutional authority to conduct the particular operation.

*Id.* We found that "principle" to be "controlling" in the case. *Id.*

And we've applied the principle broadly across constitutional and non-constitutional challenges to the government's authority to seek information. In *Ogden v. United States*, 303 F.2d 724, 731 (9th Cir. 1962), a defendant disputed the Department of Defense's ability to inquire into employees' relationship with the Communist Party. But instead of "reject[ing] the inquiry," the defendant "responded to it— falsely." *Id.* Unlike the cases above, the defendant made a non-constitutional challenge to the government's demand for answers—"the defendant . . .

attack[ed] only the sufficiency of the delegation to the Department of Defense of authority to make the inquiry, and not the constitutional basis of the governmental operation in which the inquiry was made." *Id.* Even so, we applied the same longstanding principle: "One who has given false answers to material inquiries regarding a matter colorably within the authority of a government agency may not defend a subsequent prosecution under 18 U.S.C.[] § 1001 on the ground that the governmental operations involved were in fact vulnerable to constitutional attack." *Id.*

Other circuits follow the same principle. *See United States v. Holden*, 70 F.4th 1015, 1017 (7th Cir. 2023) ("[F]alse statements may be punished even when the government is not entitled to demand answers" because "[t]he word 'material' . . . does not create a privilege to lie, when the answer is material to a statute, whether or not that statute has an independent constitutional problem."); *United States v. Walgreen Co.*, 78 F.4th 87, 95 (4th Cir. 2023) ("[C]riminal-fraud defendants can't escape liability by arguing that their fraudulent statements went to illegal requirements."). Thus, the purported invalidity of the government's ask does not give a defendant license to lie.

So whether the government was asking improper questions under the INA is irrelevant to whether a defendant committed visa fraud. The government may still enforce statutes, like § 1546(a), that prevent "cheating the government" and that stop "those who would swindle it[,] regardless" of whether the government exceeded its authority under the INA. *Kapp*, 302 U.S. at 218. So whether USCIS violated the INA "is legally irrelevant to the validity of" an indictment under § 1546(a). *See Bryson*, 396 U.S. at 68.

The proper forum to challenge USCIS's authority to ask detailed questions on I-129 petitions wasn't through an attack on a criminal fraud indictment. "One who elects . . . a course [of fraud and deceit] as a means of self-help may not escape the consequences" by arguing the government exceeded its authority. *Dennis*, 384 U.S. at 867. Instead, if Defendants were so concerned with the legality of I-129's questions, they could have resorted to legal process and pursued something like a "declaratory-judgment action[,] rather than tell a lie" that violated a criminal statute. *See Holden*, 70 F.4th at 1017.

Defendants fail to distinguish the applicability of *Kapp* and its progeny.

First, Defendants argue that the *Kapp* line of cases has "nothing to do with materiality." According to Defendants, none of these cases involve challenges to the *materiality* of the false statements because the materiality of the statements was accepted. But that's wrong. *Kapp* itself was about materiality. In *Kapp*, the district court dismissed the criminal charges because it believed that the false statement "cease[d] to be a material fact, if the provisions of the [AAA were] void." 302 U.S. at 216. The Court rejected that view and reinstated the criminal charges. *Id.* at 217. So the *Kapp* principle governs this case even though Defendants challenge the materiality element of § 1546(a).

Second, Defendants argue that the *Kapp* precedent is distinguishable because those cases all dealt with *constitutional* challenges to the government's action rather than a *statutory* claim that USCIS exceeded its authority. But the Court has never cabined this principle to constitutional challenges. It has broadly held that one "cannot defend against prosecution for . . . fraud by

challenging the validity of [a statutory] requirement." *Knox*, 396 U.S. at 79. And our court has broadly applied this principle to non-constitutional challenges to government authority. *See Ogden*, 303 F.2d at 731. Indeed, it would be odd if the government could punish a defendant for false statements when it violates the Constitution but not when it violates a mere statute.

Finally, Defendants argue that *Kapp* is distinguishable because the defendants there received government benefits (i.e., money) directly because of the false statements. In Defendants' view, the false statements here were immaterial because the foreign-worker beneficiaries all met the requirements of the H-1B program regardless of the alleged false statements about their workplace or employer. This is irrelevant. A "false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material." *Matsumaru*, 244 F.3d at 1101. All that is necessary is that the false "statements made in support of . . . visa petitions *could* have affected or influenced the government's decision to grant those petitions." *Id.* (emphasis added).

Thus, the longstanding principle that the government may punish untruthful responses to unlawful questions as fraud controls.

### III.

For these reasons, we reverse the district court's judgment and remand for reinstatement of the criminal charges.

**REVERSED AND REMANDED.**