No. 24-3304
[NO. 3:22-cr-05139-DGE, USDC, W.D. Washington]

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOAO RICARDO DEBORBA,

Defendant-Appellant.

_____

**SUPPLEMENTAL ANSWERING BRIEF OF UNITED STATES**

_____

Appeal from the United States District Court
for the Western District of Washington at Tacoma
The Honorable David G. Estudillo
United States District Judge

_____

TEAL LUTHY MILLER
Acting United States Attorney
Western District of Washington

JONAS LERMAN
TANIA M. CULBERTSON
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone: 206-553-7970

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................ii

INTRODUCTION...................................................................................1

ARGUMENT .......................................................................................2

I.    Regulations on silencers burden the right protected by
      the Second Amendment ................................................................2

II.   The National Firearms Act's restrictions on silencer
      possession comply with the Second Amendment ...........................7

CONCLUSION ....................................................................................14

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Federal Cases

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ........................................................................ 4, 8, 9

*Duncan v. Bonta,*
    133 F.4th 852 (9th Cir. 2025) (en banc) .......................................... 4, 6

*Heller v. District of Columbia,*
    670 F.3d 1244 (D.C. Cir. 2011) .......................................................... 11

*Hill v. Colorado,*
    530 U.S. 703 (2000) ............................................................................ 3

*Luis v. United States,*
    578 U.S. 5 (2016) ................................................................................ 3

*Minneapolis Star & Trib. Co. v. Minnesota Comm'r of Revenue,*
    460 U.S. 575 (1983) ............................................................................ 3

*Mock v. Garland,*
    75 F.4th 563 (5th Cir. 2023) ............................................................... 4

*New York State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. 1 (2022) ............................................................. 7, 9, 12, 13

*United States v. Cox,*
    906 F.3d 1170 (10th Cir. 2018) ....................................................... 6, 7

*United States v. DeBorba,*
    713 F. Supp. 3d 1042 (W.D. Wash. 2024) ......................................... 6

*United States v. Miller,*
    307 U.S. 174 (1939) ............................................................................ 3

ii

*United States v. Peterson,*
  127 F.4th 941 (5th Cir. 2025) ..................................................6

*United States v. Rahimi,*
  602 U.S. 680 (2024)..................................................... passim

*United States v. Saleem,*
  No. 23-4693, 2024 WL 5084523
  (4th Cir. Dec. 12, 2024) (per curiam)....................................6

**State Cases**

*Andrews v. State,*
  50 Tenn. 165 (1871) ...............................................................3

**Federal Statutes and United States Constitutuion**

U.S. Const. amend. II.................................................... passim

Title 18, United States Code,
  Section 911..............................................................................1
  Section 921(a)(8).....................................................................1
  Section 921(a)(25)...................................................................1
  Section 922(t) ........................................................................13
  Section 922(a)(6).....................................................................1
  Section 922(g)(5)(A)................................................................1
  Section 922(g)(8) .....................................................................1

Title 26, United States Code,
  Section 5811............................................................................7
  Section 5812(a)........................................................................7
  Section 5822............................................................................7
  Section 5841............................................................................7
  Section 5845(a)(7) ...................................................................1

**Executive Orders**

Executive Order 14206, *Protecting Second Amendment Rights,*
  90 FR 8503 (Feb. 7, 2025) .......................................................1

## Other

William Baude & Robert Leider, *The General-Law Right to Bear Arms*, 99 Notre Dame L. Rev. 1467 (2024) ....................................................8

Connecticut Office of Legislative Research, *Gun Permit and License Fees* (Mar. 30, 2017)...........................................................................13

Thomas Cooley, *Treatise on Constitutional Limitations* (1868)...............4

Wilt Johnson & Bill Hutchinson, *Suspected Virginia Beach Shooter Used Legally-Bought Gun Suppressor*, ABC News (June 4, 2019).....10

David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 J. Legis. 223 (2024) ......................................9

Marines.mil, *Marine Corps Begins Widespread Fielding of Suppressors* (Dec. 30, 2020)...................................................................5

Lisa Marie Pane, *Did 'Silencer' Make a Difference in Virginia Beach Carnage?*, KRON4 (June 1, 2019) ........................................................9

Police Foundation, *Police Under Attack: Southern California Law Enforcement Response to the Attacks by Christopher Dorner* (2014)..10

Savage Arms, *How Suppressors Work to Reduce Noise and Recoil* (Mar. 12, 2024)....................................................................5

Silencer Central, *How Much Does a Suppressor Cost?* ..........................12

Daniel D. Slate, *Infringed*, 3 J. Am. Const. Hist. 381 (2025) ..................8

Michael Stewart et al., Nat'l Hearing Conservation Ass'n, *NHCA Position Statement: Recreational Firearm Noise* (Mar. 16, 2017) ........4

U.S. Dep't of Justice, Press Release, *Luigi Mangione Charged with the Stalking and Murder of UnitedHealthcare CEO Brian Thompson and Use of a Silencer in a Crime of Violence* (Dec. 19, 2024)....................10

iv

## INTRODUCTION

After a bench trial on stipulated facts, João Ricardo DeBorba was convicted of possessing an unregistered silencer,[1] plus six other firearms-related crimes. On appeal, he asserts a range of challenges to those convictions. As relevant here, he argues that his unregistered-silencer conviction under Count 7 violates the Second Amendment. The government responded in its January 2025 answering brief that silencers are not "arms" protected by the Second Amendment but that even if they were, prohibiting the possession of unregistered silencers is constitutional. Dkt. 23 at 53–73.

As part of its broader evaluation of its litigating positions in Second Amendment cases, *see* Executive Order 14206, *Protecting Second Amendment Rights,* 90 FR 9503 (Feb. 7, 2025), the government has reevaluated its position on the unregistered-silencer claim in this case.[2]

---

[1] The devices are also known as suppressors. This filing uses "silencer" because that is the statutory term (18 U.S.C. § 921(a)(25); 26 U.S.C. § 5845(a)(7)) and the term used in the indictment (3-ER-556).

[2] That review did not affect the government's position on DeBorba's other claims: his Second Amendment challenge to his convictions in Counts 1 through 3 under 18 U.S.C. §§ 922(g)(5)(A) and 922(g)(8); his materiality challenge to his false-statement convictions in Counts 4 through 6 under 18 U.S.C. §§ 922(a)(6) and 911; or his vagueness challenge on Count 7 to the statutory definition of "silencer."

In the government's view, the Second Amendment protects firearm accessories and components such as silencers. As a result, restrictions on possessing silencers burden the right to bear arms, and a ban on possessing silencers or similar accessories would be unconstitutional. The government's earlier argument to the contrary (Answering Br. 54–59) was incorrect. But the National Firearms Act's registration and taxation requirement is constitutional because it imposes a modest burden on a firearm accessory consistent with the Nation's historical tradition, as silencers are specially adaptable to criminal misuse.

For this reason, the Court should reject DeBorba's Second Amendment challenge to his unregistered-silencer conviction in Count 7. That conviction and his six other convictions should be affirmed.

## ARGUMENT

## I.    Regulations on silencers burden the right protected by the Second Amendment

The Second Amendment protects the "right to keep and bear Arms." U.S. Const. amend. II. Regardless of whether silencers themselves constitute "arms," restrictions on silencers burden the right to "keep and bear Arms" and so must be closely scrutinized to ensure compliance with the Second Amendment. "Constitutional rights . . . implicitly protect

those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26–27 (2016) (Thomas, J., concurring in judgment). In the First Amendment context, for example, a tax on ink and paper burdens the freedom of the press. *Minneapolis Star & Trib. Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 582 (1983). As Justice Scalia observed, "[t]here comes a point . . . at which the regulation of action intimately and unavoidably connected with traditional speech is a regulation of speech itself." *Hill v. Colorado*, 530 U.S. 703, 745 (2000) (Scalia, J., dissenting).

So too, in the Second Amendment context, "[t]he right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair." *Andrews v. State*, 50 Tenn. 165, 178 (1871). Although none of those activities literally involves the "keep[ing]" of "arms," each activity is a fundamental component of the right protected by the Second Amendment. *See United States v. Miller*, 307 U.S. 174, 180 (1939) ("The possession of arms also implied the possession of ammunition . . . ." (quotation marks omitted)).

The right to bear arms similarly "implies the learning to handle and use them in a way that makes those who keep them ready for their efficient use." *District of Columbia v. Heller*, 554 U.S. 570, 618 (2008) (quoting Thomas Cooley, *Treatise on Constitutional Limitations* 271 (1868)). And the right extends to firearm accessories useful to the exercise of the right. *See Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (Willett, J., concurring) ("[P]rotected Second Amendment 'conduct' likely includes making common, safety-improving modifications to otherwise lawfully bearable arms."); *see also Duncan v. Bonta*, 133 F.4th 852, 897 (9th Cir. 2025) (en banc) (Bumatay, J., dissenting) ("[T]he Second Amendment's protection of 'Arms' must extend to their functional components."); *id.* at 919 (VanDyke, J., dissenting) ("[W]hat constitutes the 'arm' includes every *functional* component and not only the most downgraded version of a 'necessary' component.").

Silencers have several benefits to persons in exercising their Second Amendment rights. Most importantly, silencers limit the noise caused by firearms, reducing a firearm's audible muzzle blast by up to 30 decibels.[3]

---

[3] Michael Stewart et al., Nat'l Hearing Conservation Ass'n, *NHCA Position Statement: Recreational Firearm Noise* 5 (Mar. 16, 2017), (continued . . .)

That noise reduction helps shooters avoid permanent hearing damage and facilitates communication with others when engaging in both civilian self-defense and public defense. Indeed, because of the hearing-related benefits of silencers, the U.S. Marine Corps began issuing them to infantry units in 2020.[4] Silencers appear to improve accuracy and aid in target reacquisition by reducing recoil and muzzle rise.[5] And silencers aid in target shooting—an activity protected by the Second Amendment—by reducing noise pollution and providing additional hearing protection beyond personal protective equipment.

All these practical benefits demonstrate that silencers facilitate the constitutional right to keep and bear arms. Accordingly, restrictions on

---

https://www.hearingconservation.org/assets/docs/NHCA_position_paper_on_firea.pdf.

[4] Marines.mil, *Marine Corps Begins Widespread Fielding of Suppressors* (Dec. 30, 2020), https://www.marines.mil/News/News-Display/Article/2459549/marine-corps-beginswidespread-fielding-of-suppressors.

[5] *See* Savage Arms, *How Suppressors Work to Reduce Noise and Recoil* (Mar. 12, 2024), https://savagearms.com/blog/post/how-suppressors-work-to-reduce-noise-and-recoil; Congressional Sportsmen's Foundation, *Firearm Suppressors*, https://congressionalsportsmen.org/policy/firearm-suppressors.

silencers impose a burden on using firearms that implicates the Second Amendment.

Several courts—including the district court here—have held that silencers are not "arms" and thus receive no Second Amendment protection.[6] In the government's view, those courts are mistaken. The Second Amendment right extends to firearm accessories useful to the exercise of the right, including silencers.

But this Court ultimately need not decide whether silencers are "arms" under the Second Amendment or fall within the "corollary right to possess accessories that are necessary for the ordinary operation of a protected weapon." *Duncan*, 133 F.4th at 868–69 (holding that high-capacity magazines fall outside that right).[7] The Court need not resolve this threshold question because DeBorba's claim fails regardless.

---

[6] *See, e.g.*, *United States v. Peterson*, 127 F.4th 941 (5th Cir. 2025) (rehearing petition pending); *United States v. DeBorba*, 713 F. Supp. 3d 1042, 1064 n.6 (W.D. Wash. 2024); *United States v. Saleem*, No. 23-4693, 2024 WL 5084523, at *2 (4th Cir. Dec. 12, 2024) (per curiam); *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018).

[7] The en banc Court in *Duncan* explained in dicta that "[m]any optional accessories—such as a high-powered scope for a rifle, a gun sling, or a silencer—may be attached to a firearm without necessarily falling within the scope of the text of the Second Amendment." 133 F.4th

(continued . . .)

## II. The National Firearms Act's restrictions on silencer possession comply with the Second Amendment

Although the National Firearms Act's restrictions on silencer possession implicate the right to bear arms, the modest burden they impose does not violate the Second Amendment. Under the Act, every silencer must be registered to its possessor in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5841. As a condition of registration, the Bureau of Alcohol, Tobacco, Firearms and Explosives confirms that the transferee is eligible to possess the device under federal, state, and local law. *See* 26 U.S.C. §§ 5812(a), 5822. And the person acquiring the silencer must pay a $200 tax. 26 U.S.C. § 5811. Although a total ban on silencers or similar accessories would be unconstitutional, the Act's modest regulations pass muster.

When the government regulates the right to keep and bear arms, it bears the burden of showing that the challenged regulation is "consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). That is a rigorous test, not a "regulatory blank check." *Id.* at 30. "Why and how the

---

at 868 (citing *Cox*, 906 F.3d at 1186 ("A silencer is a firearm accessory; it's not a weapon in itself.")).

7

regulation burdens the right are central to this inquiry." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

Even if the government can identify a specific historical analogue for a statute, the statute must comply with the broader "principles that underpin [the Nation's] regulatory tradition." *Rahimi*, 602 U.S. at 692. The founding generation distinguished between a valid regulation and an impermissible "infringement" of the right to keep and bear arms. *See* Daniel D. Slate, *Infringed*, 3 J. Am. Const. Hist. 381, 382–87 (2025).[8] A restriction could amount to an unconstitutional infringement if (among other reasons) it served an illegitimate purpose, burdened the right more severely than necessary to serve a valid purpose, or broadly negated the right. *See* William Baude & Robert Leider, *The General-Law Right to Bear Arms*, 99 Notre Dame L. Rev. 1467, 1489 (2024).[9]

Our Nation's regulatory tradition shows that the Second Amendment does not guarantee an "unlimited" right "to keep and carry any weapon whatsoever." *Heller*, 554 U.S. at 626. For example, American legislatures have long "prohibited the carrying of 'dangerous and unusual

---

[8] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5109344.

[9] https://scholarship.law.nd.edu/ndlr/vol99/iss4/5.

8

weapons.'" *Bruen*, 597 U.S. at 47 (citation omitted); *see Heller*, 554 U.S. at 627. Particularly relevant here, American legislatures have also traditionally imposed special taxes on arms that are especially susceptible to criminal misuse. *See* David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 J. Legis. 223, 227 (2024).[10] For instance, many 19th-century legislatures taxed weapons such as dueling pistols, sword canes, Bowie knives, Arkansas toothpicks, and dirks. *See id.* at 293–328 (collecting statutes).

The National Firearms Act's restrictions on silencers are "'relevantly similar'" to those historical laws in "why" they burden the right to bear arms. *Rahimi*, 602 U.S. at 698 (citation omitted). Silencers are susceptible to criminal misuse, not because they purportedly "silence" a firearm—they do not—but because they make it harder for law enforcement to identify or detect the source and direction of gunfire, such as in drive-by or mass shootings or assassination attempts.[11] This is not

---

[10] https://scholarship.law.nd.edu/jleg/vol50/iss2/3.

[11] *See* Lisa Marie Pane, *Did 'Silencer' Make a Difference in Virginia Beach Carnage?*, KRON4 (June 1, 2019), https://www.kron4.com/news/national/did-gunmans-silencer-make-adifference-in-the-carnage (quoting former ATF agent's observation that

(continued . . .)

9

to say that silencers are widely used for criminal purposes—their lawful, beneficial use appears to be overwhelming in relation to their criminal use—but they do present a niche case for criminal use.

For example, Christopher Dorner in 2013 used suppressed weapons to murder two people in a populated area and later to shoot at police officers without revealing his position.[12] DeWayne Craddock used a silencer during a mass shooting at a Virginia Beach Municipal Center.[13] And Luigi Mangione is alleged to have used a silencer in the killing of an insurance executive on a busy New York City street.[14] Thus, while silencers are beneficial to the exercise of Second Amendment rights, they

---

"a suppressor will distort the sound in such a way that it would not immediately be recognizable as gunfire").

[12] Police Found., *Police Under Attack: Southern California Law Enforcement Response to the Attacks by Christopher Dorner* 14, 20, 35–36 (2014), https://www.policinginstitute.org/wp-content/uploads/2015/07/Police-Under-Attack.pdf.

[13] Wilt Johnson & Bill Hutchinson, *Suspected Virginia Beach Shooter Used Legally-Bought Gun Suppressor*, ABC News (June 4, 2019), https://abcnews.go.com/US/suspectedvirginia-beach-gunman-resigned-personal-reasons-massacre/story?id=63449625.

[14] *See* U.S. Dep't of Justice, Press Release, *Luigi Mangione Charged with the Stalking and Murder of UnitedHealthcare CEO Brian Thompson and Use of a Silencer in a Crime of Violence* (Dec. 19, 2024), https://www.justice.gov/archives/opa/pr/luigi-mangione-chargedstalking-and-murder-unitedhealthcare-ceo-brian-thompson-and-use.

are also specially adaptable to criminal misuse beyond the mere fact that all weapons (and thus all weapon accessories) can be used in the commission of a crime—a fact accounted for in the policy choice made by the People when they adopted the Second Amendment.[15]

The National Firearms Act's restrictions on silencers also resemble historical laws in "how" they burden the right to bear arms. *Rahimi*, 602 U.S. at 698. The Act imposes only a minor burden on the right of armed self-defense. It regulates a nonessential firearm accessory, so the burden on the Second Amendment is less severe than a taxation or registration requirement applicable to weapons or essential components themselves. And the Act does not ban silencer possession; it requires only registration, payment of a modest tax, and a background check. Those

---

[15] Because ordinary firearms, unlike silencers, are not peculiarly susceptible of criminal misuse, registration laws or taxes targeting such firearms likely would not serve or be proportionate to any legitimate public-safety purpose. *See, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1291 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("requir[ing] registration of individual guns" generally does not serve any legitimate purpose and is usually "aimed at deterring gun ownership"). In addition, a law regulating or taxing the firearm itself would impose a more severe burden on the right to keep and bear arms than regulations on useful but nonessential accessories such as silencers.

burdens are comparable to the burdens imposed by historical laws taxing weapons that pose a special danger of misuse.

The Supreme Court has determined that other similarly modest burdens are consistent with the Second Amendment. For example, in invaliding a New York law requiring a "special need" to obtain a firearm-carry license, the Court in *Bruen* made clear that it was not calling into question the constitutionality of the "shall-issue" licensing regimes in 43 states, which issued permits based on the general desire for self-defense. 597 U.S. at 38 n.9. The Court explained that those schemes, "which often require applicants to undergo a background check or pass a firearms safety course," are permissible so long as "lengthy wait times" or "exorbitant fees" do not "deny ordinary citizens their right to public carry." *Id.*

The National Firearms Act's $200 transfer tax for silencers is not "exorbitant" and does not deny ordinary citizens the ability to possess and use a silencer—much less a firearm. The $200 fee is generally less than the cost of a silencer itself, which can range from $350 to $1,500.[16]

---

[16] *See* Silencer Central, *How Much Does a Suppressor Cost?*, https://www.silencercentral.com/blog/how-much-does-a-suppressor-cost.

And the fee is not disproportionate to the licensing fees charged by shall-issue states, which ranged from around $10 to $140 in 2017.[17] The Act's requirements are no more burdensome than a variety of other constitutional regulations, such as the requirements that a firearm purchaser obtain a background check, *see* 18 U.S.C. § 922(t), or that a person licensed to carry a firearm undergo safety training and pay a reasonable fee, *see Bruen*, 597 U.S. at 13, 38 nn.1, 9.

History and tradition, as discussed above, permit Congress to impose modest regulations on silencers. The National Firearms Act does not prohibit possession of silencers. It requires only registration, a background check, and a $200 tax that is not indexed to inflation.

The Act's restrictions on silencers are also consistent with the broader "principles that underpin [the Nation's] regulatory tradition." *Rahimi*, 602 U.S. at 692. The restrictions serve the legitimate purpose of regulating nonessential firearm components that are particularly susceptible to criminal misuse; they are not pretextual provisions that seek simply to inhibit the exercise of constitutional rights; and the

---

[17] Conn. Off. of Legislative Rsch., *Gun Permit and License Fees* (Mar. 30, 2017), https://www.cga.ct.gov/2017/rpt/pdf/2017-R-0066.pdf.

13

restriction involved is a modest tax, not a prohibition or other regulation that could "broadly restrict arms use by the public generally." *Id.* at 698, 700. While a complete ban on silencers would be unconstitutional, the Act's restrictions comply with the Second Amendment.

## CONCLUSION

The Court should reject DeBorba's Second Amendment challenge to his unregistered-silencer conviction on Count 7. Although the National Firearms Act's regulations on silencers burden the right to bear arms, the Act's modest burden is consistent with the principles underlying the Second Amendment. The Court should reject DeBorba's other claims for the reasons set out in the United States' answering brief (Dkt. 23) and should affirm all seven of his convictions.

May 30, 2025

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney
Western District of Washington

*s/ Jonas Lerman*
JONAS LERMAN
TANIA CULBERTSON
Assistant United States Attorneys

14

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-3304

I am the attorney or self-represented party.

**This brief contains** | 2,693 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.    **(Accompanied by unopposed motion to submit supplemental brief)**

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Jonas Lerman    **Date** | May 30, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*